Richard S. Busch (*Pro Hac Vice* Pending)
(Tennessee Bar # 14594)
E-Mail: rbusch@kingballow.com
KING & BALLOW
315 Union Street, Suite 1100
Nashville, TN 37201
(615) 259-3456 Facsimile: (615) 726-5417

Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
(424) 253-1255 Facsimile: (888) 688-0482

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Facsimile: (310) 853-6333

Attorneys for Plaintiffs
HALOSONGS, INC., MARTIN HARRINGTON,
AND THOMAS LEONARD

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| HaloSongs, Inc., Martin Harrington, and Thomas Leonard,<br><br>         Plaintiffs,<br>vs.<br><br>Edward Christopher Sheeran p/k/a Ed Sheeran, Ed Sheeran Limited, Nathan Cable Touring LLP, John "Johnny" McDaid, Sony/ATV Songs LLC, Sony/ATV Music Publishing (UK) Limited, Polar Patrol Music Limited d/b/a Polar Patrol Music Publishing, Warner Music UK Ltd., Warner Music Group Corporation d/b/a Asylum Records, and Atlantic Recording Corporation d/b/a Atlantic,<br>         Defendants. | CASE #<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Complaint Filed: June 8, 2016<br>Trial Date: Not Set |

## JURISDICTION AND VENUE

1.     The jurisdiction of this Court with respect to the copyright infringement claims is based upon 28 U.S.C. §§ 1331 and 1338(a) in that the controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C. § 101 *et seq.*), which is within the exclusive jurisdiction of federal courts pursuant to 28 U.S.C. § 1331.

2.     This Court has general personal jurisdiction over Defendants because they may be found within, and conduct systematic and continuous business in, California, as discussed fully herein.

3.     This Court has specific personal jurisdiction over Defendants given the systematic and continuous business contacts of both corporate and individual Defendants in California with respect to the Infringing Works (defined below), evidenced by the connections discussed below, which, collectively, prove purposeful availment to California.

4.     Plaintiffs' claims implicate widespread, pervasive infringement of a copyright owned by HaloSongs, Inc. ("HaloSongs"), Martin Harrington ("Harrington") and Thomas Leonard ("Leonard"), individuals who reside in California. Among other things, and as explained more fully below:

5.     Defendants offered the Infringing Works for sale in California, and/or authorized the same.

6.     Defendants advertised the Infringing Works to California residents.

7.     Defendants benefited substantially from the sale of a substantial number of copies of the Infringing Works in California.

8.     Defendants licensed and/or authorized the licensing of the Infringing Works with California companies and for exploitation in California, including but not limited the licensing of the Infringing Works in at least one major motion picture just recently released.

9.     A substantial number of purchasers of the Infringing Works are California residents.

10.     Defendants are, at a minimum, constructively aware of their continuous and substantial commercial interactions with California residents.

11.     A coordinated plan existed among all Defendants to distribute the Infringing Works throughout the U.S., including California.

12.     Defendants actively participated in and/or authorized the unauthorized and unlawful manufacture of the Infringing Works.

13.     Defendants actively participated in the unauthorized and unlawful distribution of the Infringing Works to California residents.

14.     Edward Christopher Sheeran p/k/a Ed Sheeran ("Sheeran") has made, and he and other Defendants have authorized, organized, and promoted, performances of the Infringing Works numerous times in California.

15.     Defendants have generated touring revenues from the unauthorized and unlawful exploitation of the Infringing Works, including receiving substantial revenue from such exploitation in California.

16.     Defendants, individually and collectively, have generated substantial revenue from the exploitation of the Infringing Works in California.

17.     Sheeran and John "Johnny" McDaid ("McDaid") have traveled to California on business related to the Infringing Works.

18.     Sheeran and McDaid frequently visit California, and each lived in Los Angeles while working on the album *Multiply*, containing the Infringing Works.

19.     Defendants have knowingly and willfully exploited the Infringing Works in California, and the harm resulting from such infringement was knowingly directed at HaloSongs, Harrington, and Leonard, individuals who reside in this District.

20.     California has a considerable interest in adjudicating disputes wherein California residents are the target of the harm resulting from exploitation of infringing works.

21.     The Defendants herein, who are primarily based out of the U.K., facilitated the infringing acts occurring in the U.S., and actively participated in a scheme aiding,

inducing, and contributing to copyright infringement in the U.S. Furthermore, on information and belief, these companies have also entered into agreements with California companies, or companies that have a significant presence in California, with the intention that such contracts will be performed in California.

22.     For those Defendants primarily based out of the U.K., given their willful and knowing exploitations of the Infringing Works in California, each could certainly reasonably anticipate being haled into a court in the U.S., and California specifically. Thus, jurisdiction could also be exercised constitutionally in this Court pursuant to Rule 4(k)(2).

23.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) because Defendants are subject to personal jurisdiction in this Judicial District and have committed unlawful acts of infringement in this Judicial District.

## COMPLAINT

24.     This is an action for willful copyright infringement in which Sheeran and McDaid, the credited writers of the international hit song "Photograph," among others, copied, and exploited, without authorization or credit, the work of other active, professional songwriters, on a breathtaking scale, unabashedly taking credit for the work of these songwriters by claiming it to be their own. This copying is, in many instances, verbatim, note-for-note copying, makes up nearly one half of "Photograph," and raises this case to the unusual level of strikingly similar copying. While Sheeran, McDaid, and the other Defendants received career-defining accolades, awards, and a fortune for "Photograph," the true writers of much of "Photograph" received nothing, and, following notice and a failure to cure, bring this action to vindicate their rights for the deliberate taking of their work, to recover damages, and to ask, as the law provides, that Defendants be required to disgorge their ill-gotten profits attributable to their infringement.

25.     HaloSongs, Harrington, and Leonard (collectively, "Plaintiffs"), by their attorneys, for their Complaint against Sheeran, Ed Sheeran Limited, Nathan Cable Touring LLP, McDaid, Sony/ATV Songs LLC, Sony/ATV Music Publishing (UK)

Limited, Polar Patrol Music Limited d/b/a Polar Patrol Music Publishing, Warner Music UK Ltd., Warner Music Group Corporation d/b/a Asylum Records, and Atlantic Recording Corporation d/b/a Atlantic (collectively, "Defendants"), for willful copyright infringement, further allege, upon knowledge as to its own acts and upon information and belief as to the acts of others, as follows:

## NATURE OF THIS ACTION

## THE PARTIES

26.    Plaintiff HaloSongs is a Delaware corporation, and is co-owner of the legal and equitable copyright in the musical composition "Amazing" via written assignment from Leonard, who is a co-writer of "Amazing" with Harrington. Plaintiff Harrington is the sole shareholder of HaloSongs. HaloSongs is located at 28382 Constellation Road, Valencia, CA, 91355.

27.    Plaintiff Harrington, an individual, is a co-owner of the legal and equitable copyright in the musical composition and sound recording "Amazing," which he co-wrote with Leonard. Harrington is a resident of San Diego, California.

28.    Plaintiff Leonard, an individual, is a co-owner of the legal and equitable copyright in the musical composition and sound recording "Amazing." Leonard is a resident of Orange County, California.

29.    Defendant Sheeran, an individual, is a writer and performer of the infringing composition and sound recording "Photograph" (collectively "Infringing Works," unless otherwise noted), and co-owner of the copyright of the infringing composition "Photograph." Sheeran has offered for sale, and caused and authorized others to offer for sale, the Infringing Works in California. Sheeran has sold, licensed, authorized for sale, distribution and license, and benefited from the sale, distribution, and licensing of, the Infringing Works in California. Sheeran has performed the Infringing Works numerous times in California. Upon information and belief, Sheeran lived in Los Angeles while working on the album *Multiply*, containing the infringing composition and sound recording "Photograph." Upon information and belief, Sheeran conducts systematic and

continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California. Upon further information and belief, Sheeran is a resident of Suffolk, England.

30.     Defendant Ed Sheeran Limited is a United Kingdom ("U.K.") entity with its principal place of business at 41 Great Portland Street, London, London, W1W 7LA, United Kingdom. Upon information and belief, Ed Sheeran Limited organizes and negotiates Mr. Sheeran's touring arrangements. Mr. Sheeran is the sole shareholder of Ed Sheeran Limited. Upon information and belief, Ed Sheeran Limited has arranged for the performance of the Infringing Works numerous times in California. Upon information and belief, Ed Sheeran Limited conducts systematic and continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California, including but not limited to the public performances of "Photograph" in California. Upon further information and belief, Ed Sheeran Limited entered into contracts with other Defendants which authorized and caused widespread exploitation of the Infringing Works in the United States, and specifically in California, with a significant amount of the harm directed to California and its residents.

31.     Defendant Nathan Cable Touring LLP (Ed Sheeran Limited and Nathan Cable Touring LLP, together are "Ed Sheeran Ltd.") is a U.K. entity with its principal place of business at 41 Great Portland Street, London, London, W1W 7LA, United Kingdom. Upon information and belief, Nathan Cable Touring LLP organizes and negotiates Mr. Sheeran's touring arrangements. Upon information and belief, Sheeran is an officer and LLP designated member of Nathan Cable Touring LLP. Upon information and belief, Nathan Cable Touring LLP has arranged for the performance of the Infringing Works numerous times in California. Upon information and belief, Nathan Cable Touring LLP conducts systematic and continuous business in this District, and has generated substantial revenue from organizing and negotiating the public performances of "Photograph" in California. Upon further information and belief, Nathan Cable Touring LLP entered into contracts with other Defendants which authorized and caused public

performance of "Photograph" in the United States, and specifically in California, with a significant amount of the harm directed to California and its residents.

32.     Defendant McDaid, an individual, upon information and belief, is a writer of the infringing composition "Photograph." McDaid is a songwriter signed with Defendant Polar Patrol. McDaid has offered for sale and license, and caused others to offer for sale and license, the Infringing Works in California. McDaid has sold, licensed, and authorized the sale and license of "Photograph" and benefited from the sale and license of "Photograph" in California. Upon information and belief, McDaid is a resident of the U.K., but spends a substantial amount of time in this District, and maintains a home in Malibu, California. Upon information and belief, McDaid lived in Los Angeles for some time while working on the album *Multiply*, containing the infringing composition "Photograph." Upon information and belief, McDaid conducts systematic and continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California.

33.     Defendant Sony/ATV Songs LLC ("Sony/ATV Songs") is a Delaware corporation with its principal place of business at 550 Madison Avenue, New York, NY 10022. Upon information and belief, Sony/ATV Songs serves as music publisher and has exploited the infringing composition and sound recording "Photograph." Sony/ATV Songs is responsible for coordinating, among other things, the marketing, promotion, and sale and license of the musical composition "Photograph" in the United States. Upon further information and belief, Sony/ATV Songs entered into contracts which caused widespread exploitation of the Infringing Works in the United States, including licenses for exploitation of "Photograph" in California. Upon further information and belief, Sony/ATV Songs can be served via its registered agent The Prentice-Hall Corporation System, Inc. at 2711 Centerville Road Suite 400, Wilmington, DE 19808. Upon information and belief, Sony/ATV Songs conducts systematic and continuous business in this District, including operating an office in this District, and has generated substantial revenue from the exploitation of "Photograph" in California.

34.     Defendant Sony/ATV Music Publishing (UK) Limited ("Sony/ATV UK") is a U.K. company with its principal place of business located at 30 Golden Square, London, W1F 9LD, United Kingdom. Upon information and belief, Sony/ATV UK is an affiliate of U.S. based Sony/ATV Music Publishing, which maintains offices in this District at 10635 Santa Monica Blvd #300, Los Angeles, CA 90025. Sony/ATV UK serves as music publisher and has exploited the infringing composition "Photograph." Sony/ATV UK is responsible for coordinating, among other things, the marketing, licensing, promotion, and sale of the Infringing Works in the United States. Upon information and belief, Sony/ATV UK enters into contractual relationships with residents of California. Upon information and belief, Sony/ATV UK conducts systematic and continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California.

35.     Defendant Polar Patrol Music Limited d/b/a Polar Patrol Music Publishing ("Polar Patrol") is a U.K. company with its principal place of business located at 55 Loudoun Road, St. John's Wood, London, NW8 0DL, United Kingdom. Polar Patrol is the co-owner of the copyright of, serves as music publisher for, and has exploited the infringing composition "Photograph." Upon information and belief, Polar Patrol enters into contractual and licensing relationships with residents of California with respect to "Photograph" and other of its musical compositions. Upon information and belief, Polar Patrol is responsible for coordinating, among other things, the marketing, promotion, sale and licensing of its share of the infringing musical composition "Photograph" in California and in the United States, and has specifically entered into licenses for the exploitation of "Photograph" in California. Upon information and belief, Polar Patrol conducts systematic and continuous business in this District, including but not limited to entering into contracts and agreements with California companies, which are to be performed in California, and has generated substantial revenue from those contracts, the exploitation of "Photograph," and the exploitation of other of its musical compositions in California. One such contract involves, in just the last few weeks, an acquisition, in whole

8

or in part, by a California based company, although Polar Patrol has remained a separately distinct corporation.

36.     Defendant Warner Music UK Ltd. ("Warner UK") is a U.K. affiliate of Warner Music Group with its principal place of business at 90 High Holborn, Seventh Floor, London, WC1V 6XX, United Kingdom. Warner UK is the owner of the copyright of the infringing sound recording "Photograph." Warner UK is the music label responsible for coordinating, among other things, the production, manufacture, distribution, marketing, promotion, and exploitation, of the Infringing Works. Upon information and belief, Warner UK enters into contractual relationships in, and with residents of, California. Warner UK authorized the production and distribution of the Infringing Works throughout the United States, and specifically, on information and belief, authorized its affiliated entities, Asylum and Atlantic, to distribute the Infringing Works in California. Warner UK has therefore offered for sale, and caused others to offer for sale, the Infringing Works in California. Warner UK has sold, and benefited from the sale of, the Infringing Works in California. Warner UK entered into contracts with other Defendants which caused widespread exploitation of the Infringing Works in the United States, including California, with a significant amount of the harm directed to California and its residents. Upon information and belief, Warner UK is part of the Warner Music Group Corporation, a Delaware corporation with its principal place of business at 1633 Broadway, New York, NY 10019, and with offices in Los Angeles County at 3400 W Olive Ave, Burbank, CA 91505.

37.     Defendant Warner Music Group Corporation d/b/a Asylum Records ("Asylum") is a Delaware corporation with its principal place of business located at 1633 Broadway, 7th Floor, New York, NY 10019. Asylum is owned by Warner Music Group Corporation, which maintains offices at 3400 West Olive Avenue, Burbank, CA 91505. Asylum is a music label responsible for coordinating, among other things, the production, manufacture, distribution, marketing, and promotion, of the Infringing Works in the United States. Asylum has offered for sale, and caused others to offer for sale, the

Infringing Works in California. Asylum has sold, and benefited from the sale of, the Infringing Works in California. Upon information and belief, Asylum conducts systematic and continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California. Asylum can be served via its registered agent CT Corporation System at 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.

38.     Defendant Atlantic Recording Corporation d/b/a Atlantic ("Atlantic") is a Delaware corporation with its principal place of business located at 1633 Broadway, New York, NY 10019. Atlantic is a wholly owned subsidiary of Warner Music Group Corporation, which maintains offices at 3400 West Olive Avenue, Burbank, CA 91505. Atlantic is a record label responsible for coordinating, among other things, the production, manufacture, distribution, marketing, and promotion, of the Infringing Works in the United States. Atlantic has offered for sale, and caused others to offer for sale, the Infringing Works in California. Atlantic has sold, and benefited from the sale of, the Infringing Works in California. Upon information and belief, Atlantic conducts systematic and continuous business in this District, and has generated substantial revenue from the exploitation of the Infringing Works in California. Atlantic can be served via its registered agent CT Corporation System at 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.

## FACTS RELEVANT TO COMPLAINT

### Background

#### 1.   Background of Harrington and Leonard

39.     Harrington is a British songwriter, record producer, and music publisher. Over the past 16 years, Harrington has co-written and produced multiple international hit songs for recording artists in the pop, adult, Latin, and dance genres.

40.     Harrington's first ever release was "What Took You So Long," a No. 1 hit single in the U.K. for former Spice Girl Emma Bunton. The song peaked at No. 1 on the U.K. Singles Chart and No. 6 on the European Hot 100 Singles. Harrington

received a Chart Newcomers award for being one of the youngest songwriters to have a No. 1 song in the U.K.

41.    Subsequently, Harrington wrote the U.K. and European No. 1 song "Let's Dance" by the boyband 5ive and co-wrote five songs from their No. 1 album *Kingsize*.

42.    Additionally, Harrington wrote Kylie Minogue's "Love at First Sight" on her album *Fever*, which peaked at No. 3 on the *Billboard* 200 Chart and No. 1 on the U.K. Albums Chart. "Love at First Sight" was nominated for a Grammy Award for Best Dance Recording, was nominated for an Ivor Novello Award (Most Performed Work Category), and won an ASCAP award in 2002. The single was a hit on U.K. and European radio, rising as high as No. 2 on the U.K. Singles Chart. The song also peaked at 23 on the *Billboard* Hot 100, which introduced Harrington to the U.S. Market as a songwriter.

43.    Harrington produced and co-wrote many songs on Natalie Imbruglia's album *Counting Down the Days*. The album entered the U.K. Albums Chart at No. 1. Harrington co-produced the album's lead single "Shiver," which reached No. 8 in the U.K. Singles Chart, and spent five consecutive weeks at No. 1 on the U.K. Airplay chart. "Shiver" was the most played song on U.K. Radio for 2005.

44.    Stevie Wonder, Celine Dion, Thalia, Prince Royce, Westlife, Sonique, 5ive, Busted, Atomic Kitten, Flipsyde, Lee Ryan, Simon Webbe, Echosmith, and Blue have all released songs that were written or produced by Harrington or published by HaloSongs.

45.    Leonard is a successful American singer, songwriter, and multi-instrumentalist.

46.    Leonard's writing credits include, "Safest Place to Hide" by Backstreet Boys, "You Know Me" by George Huff (No. 32 on *Billboard*'s Gospel Songs chart), "Thank You" by Charice, as well as multiple songs by Zero 7, Bo Bruce, and Echosmith.

## 2.   The Formation of HaloSongs

47.    Harrington formed HaloSongs in an attempt to build a successful music publishing company, and in order to write and co-write songs with writers signed to

11

HaloSongs for popular recording artists to release. Harrington intended to develop talented songwriters and help them achieve commercial success.

48.     Leonard was a writer signed to HaloSongs. Leonard assigned to HaloSongs 50% of musical compositions co-written by Harrington and himself, and also granted HaloSongs administration rights, for a specified term. Leonard has assigned 50% of his copyright in the musical composition "Amazing" to HaloSongs, as well as the non-exclusive right of HaloSongs to pursue this action for infringement.

49.     As active, professional songwriters, the misappropriation of Harrington and Leonard's work, and the work of the writers of HaloSongs, deprives the writers of the rightful recognition to which the writers are due, while others unfairly build their publishing portfolio, careers, and a fortune on their wrongful misappropriation. As discussed fully below, that is precisely what has happened here.

50.     Indeed, having songs properly licensed and credited is vital for a songwriter, which in turn generates other writing opportunities well into the future. It is particularly harmful to active songwriters when a song is unlawfully misappropriated. The damage to a boutique publishing company, like HaloSongs, and the writers associated with it, goes, therefore, well beyond the damage directly associated with not being compensated when their work is used. Being associated with a hit song, like "Photograph," would necessarily generate interest in other songs in the HaloSongs' catalog, and other songs written by Harrington and Leonard.

51.     Defendants' willful infringement of "Amazing" has harmed HaloSongs, Harrington, and Leonard because, among other things, Harrington and Leonard were not properly credited for their contributions to "Photograph." The proper licensing of "Amazing" for "Photograph" would not have only generated substantial revenues, but it would have generated international recognition for Harrington and Leonard as co-writers of a worldwide hit song. Instead, Harrington and Leonard had to sit by and watch Defendants receive awards, acclaim, and compensation without any of the proper

recognition being received, as it should have been, by Harrington, Leonard, and HaloSongs.

52.    In fact, Keith Urban stated in an interview with *Rolling Stone* that he "fell in love with this song ('Photograph') at Wembley [Stadium], watching everybody in the audience sing along. The songwriting is just spellbinding."

53.    Little did Mr. Urban or the crowd know, they were singing along to the "Amazing" chorus written by Harrington and Leonard.

54.    Furthermore, in just the last week, the major motion picture *Me Before You* was released. Not only is "Photograph" contained within the film, but its presence is heavily promoted by the movie, with a portion of the very chorus copied by Defendants contained in two trailers promoting the movie. The trailers are available for view on YouTube and similar websites.

55.    Being acknowledged by Mr. Urban and others of his stature, and having music highlighted in a major motion picture, are game changers for the careers of active songwriters. Songwriters are deprived of these opportunities when music is wrongly taken from them, as has happened here.

### 3. Background of "Amazing"

56.    "Amazing" was written by Harrington and Leonard on May 14, 2009. "Amazing" was finalized, recorded, produced, and mixed by Harrington on June 12, 2009. Harrington and Leonard are the sole writers of "Amazing."

57.    "Amazing" was registered with Broadcast Music, Inc. ("BMI") on July 29, 2009.

58.    A complete application for copyright registrations for the musical composition and sound recording of "Amazing" has been filed with the United States Copyright Office, with Copyright Application Case Number 1-3529378721.

59.    In early January 2011, Harrington was contacted by Ash Howes, who along with Richard "Biff" Stannard, was producing portions of Matt Cardle's upcoming album *Letters*.

60. Mr. Cardle is the winner of the 2010 season of *The X Factor*.

61. At the request of Mr. Howes, Harrington submitted a finished and fully mixed recording of "Amazing," among other songs, to Mr. Howes to be considered as a potential song to be covered (i.e., re-recorded) by Mr. Cardle.

62. On or about January 13, 2011, Harrington and Leonard agreed to send to them the chorus only version of "Amazing," but informed Mr. Howes that Harrington and Leonard retained all rights to their original version of "Amazing."

63. A few days later, Mr. Stannard emailed Harrington and Leonard and stated that Mr. Cardle loved the chorus, and asked Harrington and Leonard to send the multitracks of "Amazing" to Mr. Howes so Mr. Cardle could create a derivative version of "Amazing" with the same name ("Amazing 2").

64. Upon hearing "Amazing 2," Harrington and Leonard immediately recognized that "Amazing 2" copied the entire musical track, chords, chorus melody, chorus lyrics, and structure from their original "Amazing," as well as copying some of Harrington's instrumentation from the original multitracks, including guitars, backing vocals, and keyboards. There is no part of the chorus of the musical composition "Amazing 2" that is not in the musical composition "Amazing."

65. "Amazing 2" was credited as co-written by Messrs. Harrington, Leonard, Howes, Stannard, and Cardle, and released on February 19, 2012 as the third single from Mr. Cardle's debut studio album, *Letters*.

66. *Letters* was released on October 14, 2011 and peaked at No. 2 on The Official U.K. Albums Chart.

67. "Amazing 2" peaked at No. 84 on The Official U.K. Singles chart.

68. As of June 1, 2016 "Amazing 2" has over 1 million views on YouTube.

69. "Amazing 2" was performed on national television stations in the U.K., and was played on national and regional U.K. Radio, including, but not limited to, BBC Radio 2, MTV, ITV1, ITV2, Virgin, and The Voice.

70. Mr. Cardle performed "Amazing 2" on his 2012 *Letters* Live tour in the U.K.

14

71.     Defendants, therefore, had access to the "Amazing" musical composition through the foregoing. In addition, as discussed below, the sheer magnitude, and verbatim copying of "Amazing" by Defendants, is so blatant in both scale and degree, that it raises this matter to an unusual level of striking similarity where access is presumed.

## B. **Infringement by Defendants**

## 1. **Intentional Copying of "Amazing"**

72.     As discussed above, this action for willful copyright infringement arises from Defendants' infringement of Plaintiffs' copyright in the musical composition "Amazing."

73.     Defendants are the performer, writers, producers, record labels, manufacturers, distributors, and publishers of the infringing "Photograph" musical compositions, sound recordings, music videos, and other products embodying the Infringing Works.

74.     BBC News stated Sheeran was the most-played pop act in the U.K. in 2015. BBC News further stated, "Sheeran was No. 3 on the list in 2014, largely due to the 'broadcast and public use' of 'Thinking Out Loud,' 'Photograph' and 'Bloodstream.'"

75.     Sheeran stated in an interview with *Nova FM*, that he thought "Photograph" "will be the one that will change [his], kind of, career path." Sheeran stated in a July 2014 interview with *The Telegraph* that "Photograph" is his "collateral" song and that "[i]f the rest of the album is s___, we can sell it on this one."

76.     While "Photograph" did so for Defendants, HaloSongs, Harrington, and Leonard have not been nearly as fortunate. As discussed below, the copying of "Amazing" by "Photograph" is breathtaking in its deliberateness, magnitude, and hubris.

## 2. **Unauthorized Release and Exploitation of "Photograph"**

77.     The infringing composition and sound recording "Photograph" appears on the album titled *x* (pronounced "multiply") (hereinafter, "*Multiply*").

78.     *Multiply* was released in the United States on June 20, 2014. Warner UK, Asylum, and Atlantic released, manufactured, distributed, and marketed the single and

the album.

79.     Defendants released the single for "Photograph" on or about May 11, 2015. The song "Photograph" reached No. 1 on the *Billboard* US Adult Top 40 chart, No. 3 on the *Billboard* Adult Contemporary chart, No. 5 on the *Billboard* US Mainstream Top 40 chart, No. 10 on the US *Billboard* Hot 100 chart, and No. 18 on the US Dance/Mix Show Airplay chart.

80.     The album *Multiply* reached No. 1 on the *Billboard* 200 chart, No. 1 on the *Billboard* Top Album Sales chart, and No. 3 on the *Billboard* US Digital Albums chart.

81.     As of June 8, 2016, the official music video for "Photograph," has attracted more than 208 million views on YouTube and was nominated for Best Video at 2016 Brit Awards.

82.     "Photograph" has sold more than 3.5 million copies worldwide. On February 29, 2016, "Photograph" was certified 2x Multi-Platinum by the RIAA for selling over 2 million copies in the U.S. alone, and was certified Platinum in the U.K.

83.     As of August 25, 2015, *Multiply* sold more than 10 million copies worldwide. On December 17, 2015, *Multiply* was certified 2x Multi-Platinum by the RIAA for selling over 2 million copies in the U.S. alone. *Multiply* was also certified 9x Platinum in the U.K., 7x Platinum in New Zealand, and 3x Platinum in Canada. *Multiply* was the first album to be certified Diamond in Australia.

84.     *Multiply* received Grammy nominations for Album of the Year and Best Pop Vocal Album and was nominated for a Brit Award for Album of the Year.

85.     As discussed above, "Photograph" is featured in the major motion picture film *Me Before You*. On information and belief, Defendants licensed the Infringing Works for inclusion in that film, and on its soundtrack, after notice of the infringement was received, and with knowledge of the infringement. At minimum, Defendants were on notice of the infringement well before the film or the soundtrack were released.

### 3. Striking Similarity Between "Amazing" and "Photograph"

86.     In late 2014, Leonard called Harrington and asked Harrington to listen to

"Photograph."

87.    Upon hearing "Photograph," Harrington immediately recognized the similarity with "Amazing."

88.    The chorus of "Photograph" is an interpolation of the chorus of "Amazing," as transcribed in the same key in the example below. "Photograph" is strikingly similar to "Amazing." As explained below, in all cases, these elements of each of these songs are both quantitatively and qualitatively important to both the infringed and infringing compositions and sound recordings, and instantly recognizable to the ordinary observer.

89.    To write and record the song "Photograph," Defendants intentionally and unlawfully copied the unique and original chorus from "Amazing." The misappropriated portions of "Amazing" run throughout nearly one half of both "Photograph" and "Amazing." "Amazing" and "Photograph" are both extrinsically and intrinsically strikingly similar.

90.    The chorus sections of "Amazing" and the infringing "Photograph" share **<u>39 identical notes</u>**—meaning the notes are identical in pitch, rhythmic duration, and placement in the measure. Additionally, the chorus sections of "Amazing" and the infringing "Photograph" share 4 substantially related notes—meaning the notes are the same in pitch, but not necessarily the same in rhythmic duration or identical placement in the measure. In other words, out of the 61 notes in the chorus section of "Photograph," approximately 70 percent of the notes are identical to or substantially related to notes in the chorus section of "Amazing." Further, 64 percent of the notes in the chorus section of "Photograph" are identical to the notes in the chorus section of "Amazing."

91.    Both the "Amazing" chorus, and the infringing "Photograph" chorus, utilize similar structures of the songs (both have verses followed by bridge and chorus sections), and the first chorus of each song is half as long as the chorus sections that follow.

92.    Both the "Amazing" chorus and the infringing "Photograph" chorus have an added resolving chord at the end of each song and in one of the previous chorus sections.

93.     The chorus sections of "Amazing" and the infringing "Photograph" chorus make up large percentages of each song. The chorus sections of "Amazing" comprise 47 percent of the song. The chorus sections of the infringing "Photograph" comprise 41 percent of the song. The chorus of a song is generally considered a very important part of a song, and that is the case here for both "Photograph" and "Amazing."

94.     The chorus section of "Photograph" uses the same melodic rhythm as the chorus section of "Amazing." Both chorus sections use suspended notes in the same corresponding measures. Further, both chorus sections use quarter notes on beats 1 and 3 in corresponding measures.

95.     Both chorus sections have remarkably similar melody notes, melodic phrases, melodic rhythm, harmony, and harmonic rhythm.

96.     The chorus section of "Photograph" uses substantially the same chord

| M | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|
| A | Eb | | Bb | | Cm | | Ab(add2) | | Eb | | Gm7 | | Cm | | Ab(add2) | |
| P* | Eb | | Bb | | Cm | | Ab | | Eb | | Bb | | Cm | | Ab | |

* transposed from the key of E major down a half step to the key of Eb major for purposes of comparison

progression as the chorus section of "Amazing." The chords in the chorus section of "Amazing" are as follows:

97.     The only difference in the chord progression of the two choruses comes in measure 12 where "Amazing" uses Gm7, whereas "Photograph" uses Bb. The Gm7 chord is the related minor chord to Bb major, which uses three of the four notes found in Gm7. The change between Gm7 and Bb major is not meaningful and does not affect the overall similarity between the two songs.

98.     In fact, "Photograph" simply repeats, in measures 9-16, the harmonic pattern established in measures 1-8.

99.     Further, the chorus section of "Photograph" uses the same phrase structure as the "Amazing" chorus. Both songs make use of two eight-measure sections with two-measure phrases.

18

100.   The chorus section of "Photograph" uses the same harmony and harmonic rhythm as the "Amazing" chorus with the only exception being one chord in measure 12.

101.   The chorus section of "Photograph" uses the same rhyming structure as the chorus section of "Amazing." The measures 1, 5, 9, 11, and 13 all end in a similar "ee" sound. Measures 1, 9, and 13 actually end in the same word ("me").

102.   The similarity between the chorus sections of "Amazing" and "Photograph" is strikingly similar and would be obvious to an ordinary observer. It was not the product of independent creation.

103.   The red notes in the following transcript dramatically highlight the degree of similarity between the pieces (39 identical and 4 closely related pitches).

104.   The choruses of "Amazing," "Amazing 2," and "Photograph" include:











\* transposed from original key of E major to Eb major for the purposes of comparison
\*\* transposed from original key of C major to Eb major for the purposes of comparison

105.   The striking similarity of notes, structure, harmony, vocal style, and rhythm are clear indicators that "Photograph" copies "Amazing." As shown in the above transcriptions, there is nothing in the "Amazing 2" chorus that did not originate with

"Amazing," and that is not in "Amazing," and "Photograph's" copying of the "Amazing" chorus is in many places verbatim.

106. The songs' similarities reach the very essence of the work. The similarities go beyond substantial, which is itself sufficient to establish copyright infringement, and are in fact striking. The similarity of words, vocal style, vocal melody, melody, and rhythm are clear indicators, among other things, that "Photograph" copies "Amazing."

### 4. Defendants' Copying of the Chorus of "Amazing"
### through Access to "Amazing 2"

107. The "Amazing" chorus is original to "Amazing."

108. "Amazing 2" uses the same parts of "Amazing" copied in "Photograph." "Amazing 2" is a derivative work of "Amazing."

109. The chorus of "Amazing 2" is a virtual verbatim copy of the chorus of "Amazing."

110. There are no similarities between "Photograph" and "Amazing 2" that do not also exist in, and originate from, "Amazing."

111. Any copyright in the derivative "Amazing 2" would extend only to the material contributed by the author of such work, as distinguished from the pre-existing material employed in the work, and would not imply any exclusive right in the pre-existing portions of "Amazing" copied in "Photograph."

112. Under 17 U.S.C. § 103(b), any copyright in "Amazing 2" is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the pre-existing work "Amazing."

113. Given that a complete copyright application for "Amazing" has been filed, but an application for the derivative work has not, a suit for infringement may be maintained as to any protected element contained in the registered preexisting work "Amazing," which includes all copying at issue in this action.

114. Material copied from the underlying work "Amazing," will constitute an infringement of "Amazing" regardless of whether the defendant copied directly from the

underlying work, or indirectly via the derivative "Amazing 2."

115.  Given the striking similarity between the chorus of "Amazing" and "Photograph," Defendants knew when writing, publishing, recording, releasing, and distributing, "Photograph" that they were infringing on a pre-existing musical composition.

116.  Given Defendants' access to "Amazing 2," Defendants knew when writing, publishing, recording, releasing, and distributing, "Photograph" that they were infringing the musical composition "Amazing."

### 5. Unauthorized Exploitation of Amazing

117.  On or about December 22, 2015, HaloSongs, Harrington, and Leonard notified counsel for Sheeran and other Defendants that "Photograph" unlawfully copied "Amazing."

118.  Plaintiffs made continuous efforts to privately resolve this issue without litigation. Plaintiffs wished to resolve this issue amicably, however, despite Plaintiffs' efforts, the infringement continued, there was no resolution of this matter, and Plaintiffs were forced to bring this lawsuit.

119.  The conduct of Defendants has been willful from the inception of the creation of "Photograph." In addition, subsequent to this notice, Defendants have failed to cease their exploitation of "Photograph," and have continued their willful infringing activity.

120.  Defendants have, without authorization, created derivative works of "Amazing" and reproduced, distributed, published, displayed, publicly performed, and otherwise exploited the Infringing Works, resulting in substantial revenue for Defendants.

121.  Sheeran performed and continues to perform the Infringing Works on the radio, at 179 live concerts worldwide, at personal appearances, in videos, on television and/or otherwise.

122.  As mentioned above, Defendants have acted willfully with respect to the use of "Photograph" in the film and soundtrack *Me Before You*.

123.   As discussed fully above, all Defendants are responsible in some manner for the events described herein and are liable to Plaintiffs for damages available under the Copyright Act. Defendants named herein are the writers, performers, producers, record labels, distributors, publishers, and others, who were involved with the creation, release, reproduction, distribution, exploitation, licensing, and public performance of the Infringing Works, embodied in all forms of media, including videos, digital downloads, records, motion pictures and advertisements, all of which constitute, among other things, the improper preparation of a derivative work and direct, vicarious, and contributory infringement. As co-infringers, Defendants are jointly and severally liable for all amounts owed.

124.  Each Defendant is a "practical partner," as that term is defined and interpreted by courts in this Circuit, in the infringing acts with all other Defendants, and are thus jointly and severally liable for each other's profits. As described throughout this Complaint, each of the Defendants had an important role in the infringing activity, and worked together to accomplish it, were involved in directing various aspects of many of the coordinated infringing activities, and all had a significant financial interest in the infringing activity.

125.   These acts were willful, knowing, and malicious and perpetrated without regard to Plaintiffs' rights.

126.   Despite the notice discussed above, Defendants continue to willfully infringe on the musical composition "Amazing" by reproducing, displaying, distributing, exploiting, licensing, and publicly performing the Infringing Works. The Infringing Works continue to be reproduced, sold, distributed, publicly performed, licensed, and otherwise exploited on compact discs and albums, and as digital downloads, ringtones and mastertones, and in music videos, all without payment to Plaintiffs.

127.   Indeed, upon information and belief, in the last few weeks, and with full knowledge of the infringement, Polar Patrol was brazenly sold to another company, in whole or in part, although it continues to exist as a separate corporation. Upon information

23

and belief, "Photograph" is the most valuable of all of the assets of Polar Patrol, and increased the price of the sale. The profits of Defendants that Plaintiffs are entitled to recover thus includes the portion of Polar Patrol's sale price that may be attributable to the inclusion of the infringing "Photograph" composition.

## CAUSES OF ACTION

## COUNT I

## Direct, Contributory, and Vicarious Copyright Infringement of "Amazing" By "Photograph"

128.   Plaintiffs repeat and re-allege each of the foregoing paragraphs, as though fully set forth herein.

129.   Plaintiffs are the owners of the United States copyright in all rights, titles, and interests in the musical composition "Amazing." Application Case Number 1-3529378721 for registration of the musical composition "Amazing" has been filed with the United States Copyright Office.

130.   Defendants had access to "Amazing" (as discussed above). Furthermore, "Photograph" and "Amazing" are strikingly similar, meaning that access is presumed.

131.   Defendants' unauthorized reproduction, distribution, public performance, display, and creation of a derivative work, "Photograph," infringes Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

132.   Defendants did not seek or receive permission to copy or interpolate any portion of "Amazing" into "Photograph." All of the elements of "Amazing" copied by "Photograph" are original to "Amazing."

133.   Defendants' conduct has at all times been knowing, willful, and with complete disregard to Plaintiffs' rights.

134.   As a proximate cause of Defendants' wrongful conduct, Plaintiffs have been irreparably harmed.

135.   "Photograph" copies quantitatively and qualitatively distinct, important, and recognizable portions of "Amazing." This copying satisfies both the intrinsic and extrinsic

tests to establish copyright infringement.

136.   From the date of the creation of the infringing composition and sound recording "Photograph," all Defendants have infringed Plaintiffs' copyright interest in "Amazing" including: (a) by substantially copying and publicly performing, or authorizing the copying and public performances, including publicly performing "Photograph" at radio, live concerts, personal appearances, and on video, television, and otherwise; (b) by authorizing the reproduction, distribution, and sale of the records and digital downloads through the execution of licenses, and/or actually selling, manufacturing, and/or distributing "Photograph" through various sources; (c) by substantially copying and the related marketing and promotion of the sale of the records, videos, tickets to concerts and other performances, and other merchandise; and (d) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of "Amazing" in and as part of "Photograph," packaged in a variety of configurations and digital downloads, mixes and versions, and performed in a variety of ways including radio, concerts, personal appearances, video, television, and/or otherwise.

137.   Plaintiffs have received no copyright ownership interests in, and for any of the exploitations of, "Photograph" or any of the works associated with "Photograph."

138.   The infringement by Defendants has been, and continues to be, willful and knowing.

139.   Defendants have reproduced and/or distributed and continue to manufacture, reproduce and distribute large numbers of copies of "Photograph," which violate Plaintiffs' copyrights and are at issue in this lawsuit. Defendants have not only marketed and exploited the songs that are at issue in this lawsuit, but have granted or caused to be granted to various parties, licenses to reproduce, sample and/or distribute the songs that are in violation of Plaintiffs' copyrights.

140.   With knowledge of the infringement, Defendants have induced, caused, or materially contributed to the infringing conduct of others, such that they should be found

to be contributorily liable.

141.   Defendants had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants should be found to be vicariously liable.

142.   The infringement is continuing as the album *Multiply*, on which "Photograph" appears, continues to be sold and both the album and single "Photograph" continues to be licensed for sale, downloads, ringtones, mastertones, and other exploitations by Defendants, or their agents.

143.   As a direct and proximate result of the conduct of Defendants, Plaintiffs have suffered actual damages including lost profits, lost opportunities, loss of goodwill, and lost publicity.

144.   Pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to damages, including the substantial profits of Defendants, as will be proven at trial, which, upon information and belief, are believed to exceed $20 million ($20,000,000).

145.   Plaintiffs are entitled to Defendants' profits relating to foreign sales of copies of the Infringing Works that were manufactured, distributed, or otherwise infringed domestically.

146.   In the alternative, pursuant to 17 U.S.C. § 504(c), Plaintiffs are entitled to the maximum amount of statutory damages for each act of willful copyright infringement.

147.   Plaintiffs are further entitled to a running royalty on all future exploitations of "Photograph."

148.   Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

149.   Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot be fully compensated or measured in monetary terms. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of

"Photograph," including all Infringing Works, or, in the alternative, a continuing royalty following judgment in an amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and for the following relief:

A.    A declaration that Defendants have willfully infringed Plaintiffs' copyrighted works in violation of the Copyright Act;

B.    A declaration that Defendants are directly, vicariously and/or contributorily liable for copyright infringement, as applicable;

C.    A permanent injunction requiring Defendants and their agents, servants, employees, officers, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any one of them, to cease directly and indirectly infringing, and causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of Plaintiffs' rights protected by the Copyright Act;

D.    If the Court determines a permanent injunction is not the appropriate remedy for the continued infringement of Plaintiffs' rights under the Copyright Act, then pursuant to precedent, be compensated by a running royalty paid on all exploitations of "Photograph" commencing from the date of judgment and for all amounts not taken into consideration in the judgment;

E.    An award of damages pursuant to 17 U.S.C. § 504(b), including actual damages, and the profits of Defendants as will be proven at trial, which, on information and belief, are believed to exceed $20 million ($20,000,000), including a finding that Defendants are "practical partners" of each other and jointly and severally liable for the profits of each other, or, in the alternative, the maximum amount of statutory damages pursuant to 17 U.S.C. § 504(c) for each act of willful infringement;

F.    An award of attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and under other applicable law;

G.     For pre-judgment and post-judgment interest according to law, as applicable; and

H.     For such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), and otherwise, Plaintiffs respectfully demand a trial by jury.

Dated: June 8, 2016

By: /s/ Paul H. Duvall
Richard S. Busch (*pro hac vice* pending)
Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, California 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East; Suite 1520
Los Angeles, CA 90067
Telephone: (310) 853-6355
Facsimile: (310) 853-6333