1   Richard S. Busch (admitted *pro hac vice*)
    (Tennessee Bar # 14594)
2   E-Mail: rbusch@kingballow.com
    KING & BALLOW
3   315 Union Street, Suite 1100
    Nashville, TN 37201
4   (615) 259-3456 Facsimile: (615) 726-5417

5   Paul H. Duvall (SBN 73699)
    E-Mail: pduvall@kingballow.com
6   KING & BALLOW
    1999 Avenue of the Stars, Suite 1100
7   Century City, CA 90067
    (424) 253-1255 Facsimile: (888) 688-0482
8
9   Mark L. Block (SBN 115457)
    E-Mail: mblock@wargofrench.com
    WARGO & FRENCH LLP
10  1888 Century Park East, Suite 1520
    Los Angeles, CA 90067
11  (310) 853-6355 Facsimile: (310) 853-6333

12  Attorneys for Plaintiffs
    HALOSONGS, INC., MARTIN HARRINGTON,
13  AND THOMAS LEONARD

14              **UNITED STATES DISTRICT COURT**

15       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

| | |
|---|---|
| 16  HaloSongs, Inc., Martin Harrington, and | Case No. 8:16-cv-01062 JVS-JCG |
| 17  Thomas Leonard, | |
| 18             Plaintiffs, | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(2)** |
| 19  vs. | |
| 20  Edward Christopher Sheeran p/k/a Ed | |
| 21  Sheeran, Ed Sheeran Limited, Nathan Cable | **DEMAND FOR JURY TRIAL** |
| 22  Touring LLP, John "Johnny" McDaid, Sony/ATV Songs LLC, Sony/ATV Music | |
| 23  Publishing (UK) Limited, Polar Patrol Music | Hon. James V. Selna, Courtroom 10C |
| 24  Limited d/b/a Polar Patrol Music Publishing, Warner Music UK Ltd., Warner Music Group | Complaint Filed: June 8, 2016 |
| 25  Corporation d/b/a Asylum Records, and | Trial Date: December 12, 2017 |
| 26  Atlantic Recording Corporation d/b/a Atlantic, and Kobalt Music Publishing America, Inc. | <u>Hearing Date</u> |
| 27 | January 9, 2017, 1:30 p.m. |
| 28             Defendants. | |

# Table of Contents

**Page**

I. **Preliminary Statement** ..................................................................1

   **Statement of Facts** ......................................................................5

**ARGUMENT** .........................................................................................5

II. **The Court has Specific Jurisdiction over all of
    the Moving Defendants** .............................................................5

   A. **Standard for Personal Jurisdiction** ...................................5

      1. *Purposeful Direction* .................................................6

         *(a) Standard for Purposeful Direction* ....................6

         *(b) Purposeful Direction can be Established
              through Agency* .....................................................8

      2. *Plaintiffs' Claim Arises out of Defendants'
         Forum-Related Activities* .........................................10

      3. *Fair Play and Substantial Justice* ........................11

         i. *Extent of Purposeful Interjection into the Forum* .........12

         ii. *Burden of Defendants to Defend in the Forum* .............13

         iii. *Extent of Conflict with Sovereignty of
              Defendants' States* ..............................................13

         iv. *Interest of Forum State in Adjudicating the Dispute* .....14

         v. *Efficient Judicial Resolution* ..................................15

         vi. *Importance of Forum to Plaintiffs' Interest in Relief* .....15

         vii. *Existence of Alternative Forum* ..........................15

i

**A.  Exercising Specific Personal Jurisdiction over the Moving Defendants is Appropriate given Purposeful Direction to the Forum** ............................................................16

*1.  Johnny McDaid* ..................................................17

*2.  Polar Patrol* ......................................................21

*3.  Warner UK* ........................................................21

*4.  Sony/ATV UK* ....................................................24

*5.  Ed Sheeran Limited* ..........................................24

*6.  Nathan Cable Touring LLP* ..............................25

**III.   Conclusion** ....................................................................25

# **Table of Authorities**

**Page(s)**

*Allphin v. Peter K. Fitness, LLC*,
    Case No. 13-cv-01338-BLF, 2014 U.S. Dist. LEXIS 171711
    (N.D. Cal. Dec. 11, 2014)...........................................................................8, 9

*Amoco Egypt Oil Co. v. Leonis Navigation Co.*,
    1 F.3d 848 (9th Cir. 1993) ....................................................................14, 15

*Argus Media, Ltd. v. Tradition Fin. Servs.*,
    Case No. 09 Civ. 7966 (HB), 2009 U.S. Dist. LEXIS 120866
    (S.D.N.Y. Dec. 29, 2009) ...............................................................................16

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
    223 F.3d 1082 (9th Cir. 2000) .......................................................................11

*Brayton Purcell LLP v. Recordon & Recordon*,
    606 F.3d 1124 (9th Cir. 2010) .........................................................................6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)........................................................................6, 12, 13, 15

*Cabell v. Zorro Prods.*,
    155 F. Supp. 3d 1143 (W.D. Wash. 2014) .............................................10, 11

*Calder v. Jones*,
    465 U.S. 783 (1984)...........................................................................7, 8, 19

*Chan v. Society Expeditions, Inc.*,
    39 F.3d 1398 (9th Cir. 1994) ...........................................................................7

*Cirana Corp. v. Changshu Jisheng Spinning & Weaving Commodities Co.*,
    No. 2:16-cv-4590-CAS(GJSx), 2016 U.S. Dist. LEXIS 140096
    (C.D. Cal. Oct. 6, 2016)................................................. 6, 7, 11, 15, 18, 19, 23

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) .........................................................................14

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. 2016)...........................................................10

*Daimler AG v. Bauman,*
    134 S. Ct. 746 (2014) ...............................................................................7, 9, 10

*DFSB Kollective Co. v. Bourne,*
    897 F. Supp. 2d 871 (N.D. Cal. 2012) ...............................................6, 12

*Dish Network L.L.C. v. Sonicview USA, Inc.,*
    No. 09-cv-1553-L(WVG), 2012 U.S. Dist. LEXIS 134867
    (S.D. Cal. Sep. 19, 2012) ..............................................................................6

*Doe v. Geller,*
    533 F. Supp. 2d 996 (N.D. Cal. 2008) ..................................................12

*Doe v. Unocal Corp.,*
    248 F.3d 915 (9th Cir. 2001) ............................................7, 8, 9, 17

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002) ..................................................................13

*FDIC v. British-American Ins. Co.,*
    828 F.2d 1439 (9th Cir. 1987) ..................................................................13

*Fields v. Sedgwick Associated Risks, Ltd.,*
    796 F.2d 299 (9th Cir. 1986) ....................................................................14

*Getty Images (US), Inc. v. Virtual Clinics,*
    No. C13-0626JLR, 2013 U.S. Dist. LEXIS 129275
    (W.D. Wash. Sep. 9, 2013) ........................................................................11

*Goldberg v. Cameron,*
    482 F. Supp. 2d 1136 (N.D. Cal. 2007) ................................................11

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,*
    328 F.3d 1122 (9th Cir. 2003) ..................................................................12

*Herring Networks, Inc. v. AT&T Servs.,*
    No. 2:16-cv-01636, 2016 U.S. Dist. LEXIS 98231
    (C.D. Cal. July 25, 2016) .........................................7, 8, 9, 17, 20, 23

*Int'l Shoe Co. v. Wash.,*

iv

326 U.S. 310 (1945) ...................................................................................9

*Johnson v. Venzon*,
    No. C12-895RSL, 2012 U.S. Dist. LEXIS 123934
    (W.D. Wash. Aug. 30, 2012) .................................................................7

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
    Case No. CV 15-05024DDP (Ex), 2016 U.S. Dist. LEXIS 32666
    (C.D. Cal. Mar. 14, 2016) .............................................................8, 17

*Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours & Co.*,
    No. 13-cv-01180-BLF, 2015 U.S. Dist. LEXIS 106292
    (N.D. Cal. Aug. 11, 2015) ....................................................................10

*Lucasfilm Limited v. Ainsworth*,
    [2009] EWCA Civ. 1328 at P 174 .......................................................16

*Mattel, Inc. v. MCA Records, Inc.*,
    28 F. Supp. 2d 1120 (C.D. Cal. 1998) ...........................................13, 23

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ...................................................8, 15, 19

*Mossimo Holdings LLC v. Haralambus*,
    No. CV 14-05912, 2015 U.S. Dist. LEXIS 14133
    (C.D. Cal. Feb. 3, 2015) ......................................................................24

*NML Capital, Ltd. v. Republic of Arg.*,
    No. 2:14-cv-492-RFB-VCF, 2015 U.S. Dist. LEXIS 34043
    (D. Nev. Mar. 16, 2015) .....................................................................7, 9

*Pac. Atl. Trading Co. v. M/V Main Express*,
    758 F.2d 1325 (9th Cir. 1985) .............................................................15

*Precision Craft Log Structures, Inc. v. Cabin Kit Co.*,
    No. CV05-199-S-EJL, 2006 U.S. Dist. LEXIS 19233
    (D. Idaho Mar. 3, 2006) ......................................................................11

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
    668 F.3d 1148 (9th Cir. 2012) ...............................................................6

v

*Schwarzenegger v. Fred Martin Motor Co.*,
 374 F.3d 797 (9th Cir. 2004) ...........................................................5, 6, 12, 16

*Sher v. Johnson*,
 911 F.2d 1357 (9th Cir. 1990) .......................................................13

*Sinatra v. National Enquirer, Inc.*,
 854 F.2d 1191 (9th Cir. 1988) .......................................................13

*Unicolors, Inc. v. Myth Clothing Co.*,
 No. CV15-9419-CAS(JCx), 2016 U.S. Dist. LEXIS 21968
 (C.D. Cal. Feb 22, 2016)............................................................7, 25

*Walden v. Fiore*,
 134 S. Ct. 1115 (2014)................................................................17

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
 704 F.3d 668 (9th Cir. 2012) .......................................6, 7, 8, 18, 19

*Weaver v. Johnson & Johnson*,
 No. 16-cv-00257-GPC, 2016 U.S. Dist. LEXIS 56210
 (S.D. Cal. Apr. 27, 2016)............................................................8, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.      **Preliminary Statement**

Despite the numerous factual allegations set out in Plaintiffs' First Amended Complaint ("FAC") providing more than colorable grounds for the Court to exercise specific personal jurisdiction over Defendants in this matter (*see* DE 31 at ¶¶ 34-44), six of the Defendants have alleged that this Court lacks personal jurisdiction over them. (DE 38). The Defendants moving to dismiss the Complaint for lack of personal jurisdiction are: John "Johnny" McDaid ("McDaid"), Polar Patrol Music Limited ("Polar Patrol"), Warner Music UK Ltd. ("Warner UK"), Sony/ATV Music Publishing (UK) Limited ("Sony/ATV UK"), Ed Sheeran Limited, and Nathan Cable Touring LLP[1] ("Nathan Cable") (collectively, "Moving Defendants"). After the Moving Defendants filed their motion, Plaintiffs, at the Defendants' request, provided facts and authority to support Plaintiffs' request for limited jurisdictional discovery to elucidate the details of the Moving Defendants' contacts with the forum. (*See* DE 50-7 at ¶ 11; DE 53 at ¶ 9; DE 54 ¶¶ 4-6; DE 54-1; DE 54-2). Defendants nonetheless stonewalled Plaintiffs at every turn, and refused to provide any information. (*Id.*). Accordingly, Plaintiffs have filed with this Court a motion to stay Defendants' motion to dismiss and a request for leave to take jurisdictional discovery to obtain non-public information to support the allegations of the FAC (DE 50-1) ("Plaintiffs' motion").

As Plaintiffs' motion will not be heard, however, until January 9, 2017, Plaintiffs hereby submit this initial response to the Defendants' motion, but will file a more complete response if permitted to obtain the requested limited jurisdictional discovery. In order to avoid duplication with the material set out in Plaintiffs' motion, Plaintiffs incorporate by reference herein the facts and evidentiary support set out therein. (DE 50-1 at Pages 2-13).

---

[1] With respect to Ed Sheeran Limited, and Nathan Cable, Plaintiffs offered to substitute out those Defendants for three Delaware entities bearing similar names – Ed Sheeran LP, Ed Sheeran LLC, and Nathan Cable, LLC – if Defendants advised that those were the actual entities receiving Sheeran's United States income related to "Photograph"– but Defendants refused to provide any information. (DE 50-7 at ¶ 6; DE 53 at ¶ 5).

As discussed below, Plaintiffs are not joining "foreign Defendants" in the "hope" to somehow expand the scope of the US Copyright Act, as Defendants suggest (DE 38 at Pages 27-28), but have named Defendants who: (1) either directly, or through an agent, have engaged in infringing conduct in California and/or purposefully directed their tortious conduct to California; (2) have exploited the Infringing Works in California; and (3) have sufficient contacts with California to make this Court's exercise of personal jurisdiction over the Moving Defendants reasonable and comporting with fair play and substantial justice.

As set out in detail in Plaintiffs' motion, it is the Defendants, and not the Plaintiffs, who have submitted carefully worded Declarations replete with legal conclusions, devoid of key facts, and with sworn statements that Plaintiffs have shown to be false, in the hope of desperately trying to avoid answering for their misconduct in this Court. (DE 50-1 at 20). They have also, as discussed more fully below, misstated the law in a dramatic way, by wrongly claiming that the agency theory for obtaining specific personal jurisdiction over a foreign defendant is no longer viable, when that is clearly not the case. The truth is that the Defendants, with their vast resources, are simply trying to make the prosecution of this action as difficult and expensive as possible in the hope that it will dissuade Plaintiffs from pursuing it, and Defendants will say anything, even under oath, to accomplish that goal. The prime example is Johnny McDaid: he admittedly co-wrote "Photograph" in the U.S. with Mr. Sheeran (DE 43 at ¶ 15), he shared a residence with his fiancé Courteney Cox in Malibu, California during the time "Photograph" and the other songs on the *Multiply* album was being created, and thereafter (DE 43 at ¶ 10; DE 54-5; DE 54-6), admittedly went to California to work on songs on the *Multiply* album (DE 54-3), was photographed at the studio of one of the producers of "Photograph" at the completion of the *Multiply* album (DE 54-10), and co-owned a California company with Ms. Cox. (DE 54-7; DE 54-8). Yet, he submitted a Sworn Declaration stating that it would be a burden and inconvenience on him to defend this action in California. (DE 43 at ¶¶ 19-21).

That is not all. As also discussed in Plaintiffs' motion, Plaintiffs sent a claim letter to Mr. Sheeran's U.K. counsel in December 2015. (DE 52-5). Mr. Sheeran's U.K. counsel formerly represented Plaintiffs Harrington and HaloSongs, and knows that both are California citizens. (DE 52 at ¶ 16; DE 52-7).[2] Thereafter, but well before the filing of this action, counsel for Defendants, Ilene Farkas, advised Mr. Harrington's former counsel, Jonathan Altschul, of California based Loeb & Loeb, that Mr. McDaid was aware of the claim, that he and Sheeran had listened to the mp3 tape of "Amazing" sent to Sheeran's counsel on March 4, 2016, and that Mr. McDaid had taken news of the claim badly. (DE 52 at ¶¶ 17, 20; DE 52-8). Mr. McDaid nonetheless submitted a sworn Declaration, accompanying Defendants' motion, stating that he did not know of the claim until after the filing of this action, and did not know that Plaintiffs are California residents. (DE 43 at ¶ 18).

The position of Mr. McDaid and the other Moving Defendants is no less outrageous with respect to their other points and arguments. Not only was it foreseeable to Mr. McDaid that the song he wrote in Kansas City, Missouri, "Photograph," would need to be produced and completed, and not only did he admittedly work on six versions of it thereafter, but he was certainly aware of and/or approved of the California producers who also worked on it, Rick Rubin (at whose studio he was pictured), and Jeff Bhasker, who produced the final version of "Photograph." (DE 54-9; DE 54-10). Mr. McDaid also assigned a portion of his publishing, and administration, to Defendant Polar Patrol, who in turn retained as McDaid/Polar Patrol's U.S. agent, Defendant Kobalt Music Publishing America, Inc. ("Kobalt") to license their combined share of

---

[2] The publically available BMI entry for the infringed work "Amazing" lists Martin Harrington Songs as a publisher and provides an address: Martin Harrington, 2240 Encinitas Blvd, D 244, Encinitas, CA 92024. Additionally, the BMI entry for the derivative work also called "Amazing" ("Amazing 2") lists HaloSongs at the same address. (See DE 52 at ¶ 14; DE 52-6).

"Photograph" in the U.S.[3] While, again, Polar Patrol submitted a carefully worded Declaration about taking a "hands off" approach with respect to Kobalt's activities, (DE 38 at Page 13; *see generally* DE 44), which was transparently worded with that buzzword to try to fit within case authority, nowhere did they say that its arrangement with Kobalt did not state that Polar Patrol/McDaid retained the right to approve licenses before they were entered into, and nowhere did the Declaration say that Kobalt had not sought approval before entering into licenses in California or with California Companies for *specific* exploitations of the Infringing Works. (*Id*.).

Finally, Warner UK is the owner of the "Photograph" sound recording, and has signed Mr. Sheeran to a recording agreement under a work-for-hire agreement. (DE 45 at ¶ 5). Mr. Sheeran was in California recording "Photograph" at the instance and expense of Warner U.K. (DE 45 at ¶ 5). Warner UK also hired the California producers who worked on "Photograph," and entered into inter-company license agreements with its affiliates to distribute "Photograph" in the U.S. and throughout California specifically. (DE 45 at ¶¶ 13-14). The same type of relationship exists between Sony/ATV, and Sony/ATV UK. (DE 42 at ¶ 9).

The Moving Defendants, as discussed further below, and in Plaintiffs' motion, should not be allowed to avoid this litigation given their purposeful direction of infringing activity to the forum, and numerous contacts with the forum arising from exploitations of the Infringing Works, which more than satisfies this Court's ability to exercise specific personal jurisdiction over the Moving Defendants. Accordingly, the Moving Defendants' motion should be denied. Alternatively, as discussed in Plaintiffs' Motion on this subject, Plaintiffs respectfully request that adjudication of this motion be stayed while Plaintiffs are allowed to conduct limited jurisdictional discovery as to each

---

[3] As discussed in Plaintiffs' motion, and further below, the Kobalt Entities act as a single enterprise that administer compositions based on territory rather than adhering to corporate formalities, and regardless of which Kobalt Entity signed the administration agreement. (DE 50-1 at Pages 4-6, 10-11).

Moving Defendant.[4]

**Statement of Facts**

Plaintiffs hereby incorporate by reference the Statement of Facts contained in Plaintiffs' motion, together with all of the Exhibits and Declarations submitted therewith. (DE 50-1).

**ARGUMENT**

**II.     The Court has Specific Jurisdiction over all of the Moving Defendants**

**A. Standard for Personal Jurisdiction**

When a court is determining a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). In such cases, as here, courts are to determine whether the pleadings and affidavits make a *prima facie* showing that jurisdiction is proper. *Id.* at 801. Further, conflicts between parties over statements contained in affidavits must be construed in plaintiffs' favor. *Id.*

Because the applicable California long-arm statute is coextensive with federal due process requirements, this Court has jurisdiction over the Moving Defendants if they have sufficient "minimum contacts" with the forum state. *Id*. at 800-01. The Ninth Circuit applies a three-prong test to determine whether a defendant has minimum contacts necessary to establish specific personal jurisdiction: (1) defendant's purposeful direction of activities to the forum or resident thereof; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Schwarzenegger*, 374 F.3d at 802. This test can be met even in the absence

---

[4]   Further, Plaintiffs respectfully request leave to conduct discovery on the three Delaware entities listed in note 1, supra. Defendants denied Plaintiffs' requests for information regarding these entities, despite Plaintiffs offer to exchange Defendants Ed Sheeran Limited and Nathan Cable Touring LLP for the proper U.S. entities responsible for collecting Mr. Sheeran's U.S. revenue. (DE 50-7 at ¶ 5; DE 53 at ¶ 5; DE 54 at ¶ 6).

of physical contact with the forum. *Id*. at 803 (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

The plaintiff bears the burden of satisfying the first two prongs of this test. *Id*. at 802. If the plaintiff satisfies this burden, the burden shifts to the defendant to make a "compelling case" that the third prong—the exercise of jurisdiction is reasonable—is not met. *Id*. (*citing Burger King*, 471 U.S. 462); *see also DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 879 (N.D. Cal. 2012).

*1. Purposeful Direction*

*(a) Standard for Purposeful Direction*

Plaintiffs allege that Defendants are liable for willful copyright infringement. (*See* DE 31 at ¶ 140). As such, the proper analysis of the first prong evaluates whether the Defendants have "purposefully directed" their activities to the forum. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). To evaluate this prong, the Ninth Circuit has adopted the *Calder*-effects test. *Brayton*, 606 F.3d at 1128. Under this test, a defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, which (3) causes harm that the defendant knows is likely to be suffered in the forum state. *Id*.

First, an intentional act, under this test, means the "external manifestation of the actor's will." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004). Here, the allegation in the FAC that the Defendants committed willful copyright infringement[5] is sufficient to satisfy this prong of the *Calder* test. *Wash. Shoe Co*, 704 F.3d at 675; *Cirana Corp. v. Changshu Jisheng Spinning & Weaving Commodities Co.*, No. 2:16-cv-4590-CAS(GJSx), 2016 U.S. Dist. LEXIS 140096, at *15, *17 (C.D. Cal. Oct. 6, 2016) ("Here, plaintiff is the copyright holder, is located in California, and

---

[5] In a copyright infringement action, all parties are jointly and severally liable for the willful conduct of the co-defendants. *Dish Network L.L.C. v. Sonicview USA, Inc.*, No. 09-cv-1553-L(WVG), 2012 U.S. Dist. LEXIS 134867, at *4-5 (S.D. Cal. Sep. 19, 2012) (citing *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1155 (9th Cir. 2012)).

alleges willful copyright infringement. Accordingly, the Court concludes that the []
defendants' intentional acts were expressly aimed at California.").

Second, the "express aiming prong" is satisfied by committing, approving, and/or
authorizing specific tortious acts of infringement to occur in the forum. *Calder v. Jones*,
465 U.S. 783, 789-90 (1984). Although a defendant's knowledge that the plaintiff is a
resident of the forum state can be an important factor in determining this prong, "more
importantly" is the showing that "defendants' conduct was expressly aimed at the
forum." *See Johnson v. Venzon*, No. C12-895RSL, 2012 U.S. Dist. LEXIS 123934, at
*6 (W.D. Wash. Aug. 30, 2012).

In a copyright infringement action, defendants "expressly aim" conduct at the
forum state when defendants advertise, market, or employ a distributor within the
forum, or "creat[e], control, or employ the distribution system" that brings infringing
works into the forum. *Unicolors, Inc. v. Myth Clothing Co.*, No. CV15-9419-CAS(JCx),
2016 U.S. Dist. LEXIS 21968, at *14-15 (C.D. Cal. Feb 22, 2016). Furthermore, willful
infringement is necessarily directed at California if the plaintiff's principal place of
business is located in California because it is foreseeable that the economic loss caused
by the intentional infringement would be suffered there. *Cirana Corp.*, 2016 U.S. Dist.
LEXIS 140096, at *17-18; *see also Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704
F.3d 668, 675 (9th Cir. 2012); *Johnson v. Venson*, No. C12-895RSL, 2012 U.S. Dist.
LEXIS 123934, at *6 (W.D. Wash. Aug. 30 2012). Finally, as discussed below, the
express aiming prong—and thus the purposeful direction prong—can be satisfied when
a party directs an agent's conduct to the forum state. *Daimler AG v. Bauman*, 134 S. Ct.
746, 759 n.13 (2014); *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) (citing
*Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)); *see also Herring
Networks, Inc. v. AT&T Servs.*, No. 2:16-cv-01636, 2016 U.S. Dist. LEXIS 98231, at
*20 (C.D. Cal. July 25, 2016); *NML Capital, Ltd. v. Republic of Arg.*, No. 2:14-cv-492-
RFB-VCF, 2015 U.S. Dist. LEXIS 34043, at *29 (D. Nev. Mar. 16, 2015).

Lastly, it is foreseeable that harm resulting from willful copyright infringement

will be caused in the forum state when the Plaintiff is a resident of the forum. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231-33 (9th Cir. 2011) (holding that it was foreseeable that economic loss would be inflicted in plaintiff's principal place of business and where defendant's infringement damaged the market-value of the copyrighted works); *Wash. Shoe Co.*, 704 F.3d at 675; *see also Calder v. Jones*, 465 U.S. 783, 789 (1984) (holding defendants' actions were expressly aimed at California in part because of the "potentially devastating impact" upon a California resident). Further, the impact on the California market is especially relevant here because not only is it the Plaintiffs' home state, it is also the "heart of the entertainment industry" and thus Defendants' willful infringement will be especially felt in California. *Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*, Case No. CV 15-05024DDP (Ex), 2016 U.S. Dist. LEXIS 32666, at *22 (C.D. Cal. Mar. 14, 2016).

### (b) Purposeful Direction can be Established through Agency

As mentioned above, it is well established law that the *Calder* test is satisfied through agency principles when the agent or subsidiary "performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" *See Doe v. Unocal*, 248 F.3d 915, 928 (9th Cir. 2001) (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)); *Herring Networks, Inc.*, 2016 U.S. Dist. LEXIS 98231, at *20.[6]

As discussed in Plaintiffs' motion, (DE 50-1), the assertion of the Moving Defendants that the agency theory is no longer a viable basis to assert specific personal jurisdiction over a foreign defendant is just plain wrong. (DE 38 at 21-22). There is no reason to believe that the Supreme Court's decision in *Daimler* had any effect on the

---

[6] *See also Weaver v. Johnson & Johnson*, No. 16-cv-00257-GPC, 2016 U.S. Dist. LEXIS 56210, at *13 (S.D. Cal. Apr. 27, 2016); *Allphin v. Peter K. Fitness, LLC*, Case No. 13-cv-01338-BLF, 2014 U.S. Dist. LEXIS 171711, at *13 (N.D. Cal. Dec. 11, 2014).

agency theory with respect to *specific* personal jurisdiction. While the Court mentioned language from *Doe v. Unocal* in *dicta* regarding *general* jurisdiction, the Court did not reject the agency theory. *See* 134 S. Ct. at 759 ("But we need not pass judgment on invocation of an agency theory in the context of general jurisdiction, for in no event can the appeals court's analysis be sustained.").

Indeed, later in that same ruling, the Supreme Court, made sure to note that an agency analysis may still be appropriate in a *specific* personal jurisdiction context. *Id*. at 759 n.13. The Court expressly noted, "Agency relationships, as we have recognized, may be relevant to the existence of specific jurisdiction. . . . As such, a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id*. (internal citations omitted). The Court also noted that the threshold to meet the standard for purposeful direction via agency principles is very low and can even be met by just one act. *Id*. ("'[T]he commission of some single or occasional acts of the corporate agent in a state' may sometimes 'be deemed sufficient to render the corporation liable to suit' on related claims.") (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 318 (1945)).

In the wake of *Daimler*, courts in the Ninth Circuit have still regularly applied agency principles to exercise specific personal jurisdiction over defendants. *See Herring Networks, Inc.*, 2016 U.S. Dist. LEXIS 98231, at *20 ("[T]o the extent [defendant] directed and/or authorized [agent] to engage in conduct in California, those actions may be attributed to [defendant] for purposes of evaluating personal jurisdiction."); *NML Capital, Ltd.*, 2015 U.S. Dist. LEXIS 34043, at *29 ("[A]n agency relationship may be used to exercise specific jurisdiction over a foreign company.") (*citing Daimler*, 134 S. Ct. at 759 n.13); *see also Weaver*, 2016 U.S. Dist. LEXIS 56210, at *13; *Allphin*, 2014 U.S. Dist. LEXIS 171711, at *13 (N.D. Cal. Dec. 11, 2014).

Defendants cite two unpublished opinions to support their unfounded assertions that agency theory is no longer viable to establish specific personal jurisdiction. (DE 38 at 22). Although it is true that both cases cited by Defendants mention in passing that

*Daimler's* disapproval over the Ninth Circuit's agency test in regard to *general* personal jurisdiction *could possibly* apply in the context of *specific* personal jurisdiction, neither court engaged in any significant, insightful analysis, nor expressly held that agency law is inapplicable to specific jurisdiction. *See generally Los Gatos Mercantile, Inc. v. E.I. Dupont De Nemours & Co.*, No. 13-cv-01180-BLF, 2015 U.S. Dist. LEXIS 106292, at *17 (N.D. Cal. Aug. 11, 2015) (stating merely that *Daimler* "would seem to undermine application of the *Unocal* agency test even in specific jurisdiction cases"); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (citing *Los Gatos*, without much further analysis).

In fact, despite their musings in *dicta*, the courts in both *Los Gatos* and *Corcoran* specifically noted that the Supreme Court's decision in *Daimler* only expressly applied to general personal jurisdiction, and that the Court had noted that agency analysis "may be still relevant" in regard to specific personal jurisdiction. *Corcoran*, 169 F. Supp. 3d at 982; *Los Gatos*, 2015 U.S. Dist. LEXIS 106292, at *17-19. Further, both courts went on to assess the agency relationships when making their determination regarding personal jurisdiction. *Id*.

Accordingly, Defendants are simply incorrect in their assertions that agency theory is no longer a viable basis to assert specific personal jurisdiction over a defendant. (DE 38 at 22-23). Further, as discussed below, Defendants' assertion that agency theory is inapt for the case at bar is equally unfounded.

### 2. *Plaintiffs' Claim Arises out of Defendants' Forum-Related Activities*

The Ninth Circuit employs a "but for" test with respect to the second prong of the three-prong test for analyzing specific personal jurisdiction. *Cabell v. Zorro Prods.*, 155 F. Supp. 3d 1143, 1151 (W.D. Wash. 2014). Jurisdiction is proper if the events giving rise to the claim would not have occurred "but for" the defendant's transaction of business in the forum. *Id*. This standard is met by showing that the same contacts constituting purposeful availment must be the ones that give rise to the current suit. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

As the claim here is for willful copyright infringement, this prong is satisfied by showing that the Plaintiffs suffered harm in the forum by the Defendants' infringing activities. *Goldberg v. Cameron*, 482 F. Supp. 2d 1136, 1146 (N.D. Cal. 2007) ("Here, but for defendants' alleged copyright infringement, which reached into this district and allegedly affected plaintiff in this district, plaintiff's claim would not have arisen."); *Cirana Corp.*, 2016 U.S. Dist. LEXIS 140096, at *19 (holding the "but for" prong was satisfied because plaintiffs suffered harm in the forum on account of defendants' actions); *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2013 U.S. Dist. LEXIS 129275, at *16-17 (W.D. Wash. Sep. 9, 2013); *Precision Craft Log Structures, Inc. v. Cabin Kit Co.*, No. CV05-199-S-EJL, 2006 U.S. Dist. LEXIS 19233, at *21-23 (D. Idaho Mar. 3, 2006). As discussed below, Plaintiffs have more than shown that this prong is satisfied.

In a copyright infringement suit, this prong is easily satisfied if the infringing works were exploited, or authorized to be exploited, in the forum state by the defendants. *Goldberg*, 482 F. Supp. 2d at 1146. Here, as Plaintiffs have shown, the Moving Defendants have likely each approved specific exploitations of the Infringing Works in the U.S., and specifically in California. In fact, as discussed in Plaintiffs' motion, certain Moving Defendants likely approved certain exploitations while knowing of Plaintiffs' claims, and that Plaintiffs were California residents. (DE 50-1 at Pages 6-8, 12 n.13). Accordingly, Plaintiffs' claim for willful copyright infringement necessarily arises from the Moving Defendants' forum-related contacts.

### 3. Fair Play and Substantial Justice

Regarding the third prong of the three-prong test for analyzing specific personal jurisdiction, the Ninth Circuit has set out seven factors to be individually weighed in evaluating the reasonableness of exercising personal jurisdiction in a particular case:

(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4)

11

the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003). These factors must be balanced against one another to determine reasonableness and no factor is by itself dispositive. *Doe v. Geller*, 533 F. Supp. 2d 996, 1007 (N.D. Cal. 2008). Once the plaintiff has satisfied the first two prongs of the three-prong test for analyzing specific personal jurisdiction, the burden shifts to the defendant to make a "compelling case" that the third prong—the exercise of jurisdiction is reasonable—is not met. *Schwarzenegger*, 374 F.3d at 802 (citing *Burger King*, 471 U.S. 462); *see also DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 879 (N.D. Cal. 2012). The Supreme Court has ruled that presenting a "compelling case" constitutes a very high standard, and that the defendant must show that litigation would be "'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." *Burger King*, 471 U.S. at 478 (citations omitted).

Although it is not Plaintiffs' burden to show that these factors weigh in favor of exercising jurisdiction, discussed below are the grounds illustrating why each factor weighs in favor of Plaintiffs (or is at least neutral), further supporting that this Court's exercise of specific personal jurisdiction over *each* of the Moving Defendants is reasonable. Accordingly, the Moving Defendants cannot meet the high standard to show that they will be "severely disadvantaged" by the exercise of personal jurisdiction over them in this suit.

### i. Extent of Purposeful Interjection into the Forum

The first factor weighs the extent of the defendants' purposeful interjection into the forum state's affairs. *Id*. In a copyright suit, a defendant has "purposefully interjected into the forum state's affairs" by sending promotional and marketing materials to the forum, coordinating the U.S. release of an infringing album, and by

receiving royalties from forum-based exploitations of the infringing works. *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1128 (C.D. Cal. 1998). Accordingly, this factor weighs in favor of finding reasonableness as the Moving Defendants, as discussed above, and more below, have enjoyed the benefits of California with respect to "Photograph."

### ii. Burden on Defendants to Defend in the Forum

The second factor—the burden on the defendant of defending in the forum—also likely weighs in Plaintiffs' favor in establishing the reasonableness of this Court's exercise of specific personal jurisdiction over the Moving Defendants. The Supreme Court has noted that "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King*, 471 U.S. at 474; *see also FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987). Thus, while it may be somewhat of a burden for the UK-based defendants to defend in California, it does not appear to be unreasonably so. *See Mattel, Inc.*, 28 F. Supp. 2d at 1128. "[M]odern advances in communications and transportation have significantly reduced the burden of litigating in a foreign country." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988); *see also Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). Moreover, this factor is less salient where the defendant speaks English and has traveled to the forum on business related to the instant action. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002). It would not be unduly burdensome to require any of the Moving Defendants to defend in the forum.

### iii. Extent of Conflict with Sovereignty of Defendants' States

The third factor weighs the extent of conflict with the sovereignty of the defendant's state. Defendants claim that to subject the UK Defendants to jurisdiction would somehow interfere with the sovereignty of the United Kingdom, as at least one of the Plaintiffs is also a citizen of the United Kingdom. (DE 38 at 27). To support this proposition, Defendants rely on two cases that are factually distinguishable to the facts

at bar. The first, *Fields v. Sedgwick Associated Risks, Ltd.*, involved a plaintiff who was a dual citizen of the U.S. and U.K. who was suing two British business entities in a dispute regarding professional liability insurance. 796 F.2d 299, 303 (9th Cir. 1986). In that case, the Ninth Circuit did not hold that it could not ever adjudicate a dispute between citizens of foreign nations, but rather that because the contracts at issue were governed by British law, the U.K. courts had the stronger interest in resolving the claim. *Id*. That is not the case here, as the U.S. Copyright Act applies to the wrongdoing of the Moving Defendants.

Second, Defendants rely on *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir. 1993). In that case, the plaintiff was a Delaware corporation that conducted much of its business from an oil platform in Egyptian waters. *Id*. at 849. The case arose after a ship sailing from Singapore to France collided with the oil rig. *Id*. at 850. The court noted that it was the "international context" of the case and not merely the fact that the defendants were foreign entities that caused the third factor to weigh against reasonableness. *Id*. at 852. Again, this case is irrelevant, as this action involves interpretation of U.S. copyright law, and Plaintiffs seek to recover revenue available under the U.S. Copyright Act.

### iv. Interest of Forum State in Adjudicating the Dispute

The fourth factor—the forum state's interest in adjudicating the dispute—also weighs in the favor of reasonableness. "California maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Defendants even admit that this is the case. (DE 38 at Page 20). Because each of the Plaintiffs are California residents, California has a strong interest in resolving this dispute.

### v. Efficient Judicial Resolution

The fifth factor, "[t]he site where the injury occurred and where evidence is located usually will be the most efficient forum," favors reasonableness. *Amoco*, 1 F.3d 852 (citing *Pac. Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir.

1985)). In willful copyright infringement cases, the injury occurs in the state of the plaintiff's residence or principal place of business. *Cirana Corp.*, 2016 U.S. Dist. LEXIS 140096, at *17 (citing *Mavrix Photo*, 647 F.3d at 1231). Here, the Plaintiffs are California residents, and despite Defendants' assertions that HaloSongs, Inc. is a Delaware Corporation, its principal place of business is in California. (DE 52-6). Accordingly, this factor weighs in favor of a finding of reasonableness. Further, as discussed above, Plaintiffs are not seeking to obtain extraterritorial application of their U.S. copyright infringement claims as Defendants so wantonly allege. Plaintiffs are merely trying to enforce their rights to the full extent of the U.S. Copyright Act and to recoup from Defendants revenues from *all* U.S. exploitations of the Infringing Works.

### vi. Importance of Forum to Plaintiffs' Interest in Relief

The sixth factor weighs convenient and effective relief for plaintiff. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp.*, 471 U.S. at 473. As the Plaintiffs in this case are all California residents, this factor weighs in favor of reasonableness. Further, although in weighing the seventh factor, Defendants offer the United Kingdom as an alternative forum (DE 38 at 28), the sixth factor weighs in favor of reasonableness when there exists a "significant difference" in the laws of the alternative forum. *See, e.g.*, *Pac. Atl. Trading Co.*, 758 F.2d at 1331. Accordingly, this factor also weighs in favor of reasonableness as Plaintiffs are seeking redress for U.S. exploitations of the Infringing Works pursuant to U.S. copyright law.

### vii. Existence of Alternative Forum

In regards to the seventh factor, as previously mentioned, the Moving Defendants offer the U.K. as an alternative forum. However, as this action involves application of the U.S. Copyright Act, and seeks recovery of damages from exploitations arising from the U.S., the U.K. is obviously not an adequate alternative forum. *Argus Media, Ltd. v. Tradition Fin. Servs.*, Case No. 09 Civ. 7966 (HB), 2009 U.S. Dist. LEXIS 120866, at *16 (S.D.N.Y. Dec. 29, 2009); *accord Lucasfilm Limited v. Ainsworth*, [2009] EWCA

Civ. 1328 at P 174 ("We accordingly conclude that for sound policy reasons the supposed international jurisdiction over copyright infringement claims does not exist.").

## B. Exercising Specific Personal Jurisdiction over the Moving Defendants is Appropriate given Purposeful Direction to the Forum.

Given that the Moving Defendants' forum-related activities are the but-for cause of Plaintiffs' claim of willful copyright infringement against the Moving Defendants, and that assertion of specific personal jurisdiction over the Moving Defendants is clearly reasonable, the Court should deny the Moving Defendants' motion in its entirety because each has purposefully directed their infringing actions to the forum.

As discussed in Plaintiffs' motion, each of the Moving Defendants, either directly or through an agent, purposefully directed tortious conduct to California by authorizing or approving specific exploitations of the Infringing Works within the forum either directly or through an agent. The grounds establishing how each Moving Defendant has purposefully directed behavior toward the forum are discussed individually below. Of course, all conflicts between the parties must be construed in Plaintiffs' favor. *Schwarzenegger*, 374 F.3d at 802.

While Defendants claim agency theory is inapt because the U.S. Defendants "do not perform functions that the U.K. Defendants would otherwise perform in their absence" (DE 38 at Pages 22-23), Defendants admit that they would "contract another company to exploit [their] repertoire in the United States" if their U.S. subsidiaries and affiliates did not exist. (DE 45 at ¶ 20; *see also* DE 38 at Page 22).

This admission demonstrates that exploitation of the Infringing Works is "sufficiently important" to the Moving Defendants such that, absent their agents in the U.S., they would still undertake to exploit the Infringing Works in the U.S. *See Doe v. Unocal*, 248 F.3d at 928. This is the very essence of the *Doe v. Unocal* test, that but-for the subsidiary, the principal would have to undertake the action itself (or in this case contract with another party to do so). *Id*. Further, Defendants claim that they do not control the U.S. agents. (DE 38 at Page 22). However as set forth in Plaintiffs' motion,

and the accompanying Declarations, Plaintiffs have shown that the Moving Defendants have all likely retained authorization and/or approval rights with respect to *specific* exploitations of the Infringing Works in California, and Defendants do not deny it. (*See generally* DE 50-1; *see also* DE 50-2 at ¶¶ 5-7; 50-6 at ¶¶ 6-7; DE 51 at ¶¶ 7-10; DE 52 at ¶¶ 8-11).

These types of authorization and/or approval rights constitute purposeful direction because the Moving Defendants have "directed and/or authorized" their agents to act in California. *Herring Networks, Inc.*, 2016 U.S. Dist. LEXIS 98231, at *20. Simply put, the Infringing Works would not be exploited in the forum, and in large part could not be exploited according to the terms of the various administration and inter-company license agreements at issue in this case, *but for* the authorization and/or approval of the Moving Defendants who must give final approval for *specific* exploitations in California.

### 1. Johnny McDaid

McDaid purposefully directed his behavior to California in two important ways, and is subject to this Court's specific personal jurisdiction based on *either*: (i) his own actions which resulted in the Infringing Works being finalized in California, exploited in California, and harm directed to California, or (ii) by directing, authorizing, and/or approving his agents to exploit the Infringing Works in California, and admittedly reaping the benefits of such exploitations. (DE 43 at ¶ 14).

First, as detailed in Plaintiffs' motion, while McDaid and Sheeran co-wrote the infringing composition in Kansas City[7] (DE 50-1 at 3), it was certainly foreseeable to McDaid at that time that the infringing song "Photograph" would be recorded, produced, and finalized in Los Angeles. Unsurprisingly, it was. Further, per several publically available sources, McDaid's involvement with the Infringing Works did not

---

[7] It is well established that jurisdiction over a defendant is proper in the forum in which the defendant engaged in the commission of an intentional tort. *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014). The claim against McDaid would therefore be in Kansas City, and not the U.K., as Defendants claim, if not in California.

cease in Kansas City, as he went on to produce numerous versions of the infringing "Photograph," and is also credited as producing another track on the infringing *Multiply* album while at Coco Loco Studios in Los Angeles.[8] (*Id.* at 3-4; 54-4). Further, McDaid and Ms. Cox shared a home in Malibu since 2012 (DE 43 at ¶ 10).[9]

McDaid was intimately involved in the creation of various songs on the *Multiply* album, and with the production of "Photograph," after his initial writing of it in Kansas City. He was, therefore, likely aware of, and consented to, production work by Rick Rubin and Jeff Bhasker, each of whom are based in California, have recording studios in California, and performed work on "Photograph" at their studios in California. In fact, as mentioned above, from Ed Sheeran's own Instagram page, it is known that McDaid was present at Rubin's Shangri La Studios in California around the time of the completion of the infringing *Multiply* album and was pictured with Rick Rubin and Sheeran at his studio. (DE 54-10). In cases of intentional infringement, such as the case at hand, it is foreseeable that the harm caused by McDaid's actions would be felt in California, both where the infringement took place and where the Plaintiffs are located. *Cirana Corp.*, 2016 U.S. Dist. LEXIS 140096, at *17-18 (*citing Wash. Shoe Co.*, 704 F.3d at 679). Having begun this tort in Kansas City, with the writing of "Photograph," and set the wheels in motion for the song to be completed in California, McDaid simply cannot avoid the jurisdiction of this Court by claiming that his specific involvement in the creative process stopped in Kansas City. *Calder*, 465 U.S. at 790; *Mavrix*, 647 F.3d at 1231-32; *Lions Gate Entm't*, 2016 U.S. Dist. LEXIS 32666, at *22 ("alleged harm was felt nationwide, consistent with the extent of the campaign, but the harm was also

---

[8] McDaid is engaged to Ms. Courteney Cox. As Ms. Cox's daughter is named Coco, it is highly likely that this studio was named for Cox's daughter, and is located in their Malibu residence. (DE 54-6).

[9] While McDaid's connections to Ms. Cox may not be relevant to this Court's exercise of specific jurisdiction over McDaid for intentional copyright infringement, such connections are surely relevant to rebut McDaid's assertion that it "would be unreasonable and burdensome" to require McDaid to litigate this case in California. (DE 43 at ¶ 20).

targeted toward California specifically as a major hub of [] Defendants' business, the location of Plaintiff's principal place of business, and the heart of the entertainment industry.").[10]

McDaid also had actual notice of Plaintiffs' notice of infringement, and at least constructive notice that Plaintiffs are California residents, but did nothing to cease the exploitation of "Photograph." Counsel for Defendants, Ilene Farkas, advised Mr. Harrington's former counsel that Mr. McDaid was aware of the claim, that he and Sheeran had listened to the mp3 tape of "Amazing" sent to Sheeran's counsel on March 4, 2016, and that Mr. McDaid had taken news of the claim badly. (DE 52 at ¶¶ 17, 20; DE 52-8). The publically available BMI entries for both "Amazing" and "Amazing 2", identifying Plaintiffs as California residents (DE 52 at ¶ 14; DE 52-6), put McDaid on at least constructive notice that the harm from his intentional acts was directed at California residents, and would be felt in California.

Given these facts, McDaid's personal actions and infringing activity is necessarily directed at California. *Cirana Corp.*, 2016 U.S. Dist. LEXIS 140096, at *17-18; *see also Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012).

Additionally, McDaid is subject to specific personal jurisdiction under agency principles, as described above and below. McDaid assigned to Defendant Polar Patrol a percentage of his share of the musical composition, "Photograph." (DE 41 at ¶¶ 12-14). Plaintiffs have also made a colorable showing that McDaid assigned to Polar Patrol the right to administer his share of "Photograph" and to retain agents in the U.S. to exploit the infringing composition. (DE 43 at ¶ 12). Polar Patrol retained Kobalt Music Services Ltd. (Kobalt UK) to license the combined McDaid/Polar Patrol share of "Photograph" in the U.S. (DE 44 at ¶¶ 16-17). Kobalt UK then sublicensed its administration rights to Kobalt Music Publishing America, Inc. ("Kobalt US"). (*Id.*). As discussed in Plaintiffs' motion, (1) since licensing is generally done on a territorial basis, it would be Defendant

---

[10] Plaintiffs dispute that McDaid's involvement ended in Kansas City, and have asked for discovery on this and other issues. (DE 50-1).

Kobalt US that seeks approval from McDaid (and/or Polar Patrol) to enter into licenses to exploit "Photograph" in the U.S. (DE 50-1 at Page 10, n. 11; 50-5 at ¶ 6; DE 51 at ¶¶ 7-10; DE 52 at ¶¶ 7-8), and (2) the Kobalt Entities act as a single enterprise, and defendant Kobalt US would have assumed the obligations of Kobalt UK, to seek such approval for any U.S. licenses in any event. (DE 50-2 at ¶¶ 5-7; DE 50-5 at ¶ 6; DE 50-6 at ¶¶ 6-7; DE 51 at ¶¶ 5-10; DE 52 at ¶¶ 5-11).

As discussed in Plaintiffs' motion, and the Declarations attached thereto, Plaintiffs have set forth the grounds to show that these agreements name Kobalt as the "agent" of the songwriter or publisher and would likely have granted to McDaid and/or Polar Patrol authorization and/or approval rights for *specific* exploitations of the Infringing Works in California. (DE 50-1 at Pages 4-5, 9-11). Plaintiffs have set forth more than colorable grounds to show that McDaid/Polar Patrol approved specific exploitations of the Infringing Works in California, despite notice of Plaintiffs' claims and knowing that Plaintiffs are California residents. (*See generally* DE 31 ¶¶ 37, 40; DE 50-1 at Pages 5-8; DE 52 at ¶¶ 12-15; DE 52-5; DE 52-6). In fact, Kobalt US, as the agent of McDaid and Polar Patrol, entered into various licenses in California or with California companies for the exploitation of "Photograph" in California and elsewhere in the U.S., including with two California movie companies. (DE 44 at ¶ 16; DE 54-11; DE 54-12). "[T]o the extent [defendant] directed and/or authorized [agent] to engage in conduct in California, those actions may be attributed to [defendant] for purposes of evaluating personal jurisdiction." *Herring Networks, Inc.*, 2016 U.S. Dist. LEXIS 98231, at *20. Accordingly, as discussed above, this kind of arrangement where McDaid/Polar Patrol, the copyright holders, expressly approve the grant of a license for exploitation of an infringing work in California, allows a court to exercise personal jurisdiction over them.

### 2. Polar Patrol

Polar Patrol is the music publisher for Johnny McDaid. (DE 44 at ¶¶ 5-6). As such, Polar Patrol is subject to this Court's personal jurisdiction under the same agency

principles discussed above. In Plaintiffs' motion, there are colorable grounds to show that Polar Patrol would have retained the same, or very similar, approval and/or authorization rights held by Johnny McDaid over the Kobalt Entities. (DE 50-1 at Pages 9-11). Plaintiffs have shown that Polar Patrol has likely retained authorization and/or approval rights with respect to specific exploitations of the Infringing Works in California, and Polar Patrol does not deny it. (*See generally* DE 50-1; *see also* DE 50-2 at ¶¶ 5-7; 50-6 at ¶¶ 6-7; DE 51 at ¶¶ 7-10; DE 52 at ¶¶ 8-11). As discussed in Plaintiffs' motion, despite being represented by the same counsel, none of the Moving Defendants or Kobalt filed any Declaration denying the notion that licenses for certain specific exploitations of the Infringing Works would first require McDaid's or Polar Patrol's authorization and/or approval.

As such, Plaintiffs have set forth colorable grounds to show that Polar Patrol purposefully directed tortious conduct to the forum by approving its agent-administrator to grant *specific* licenses for exploitations of the Infringing Works within the forum, which review of the applicable administration agreements will confirm. *Herring Networks, Inc.*, 2016 U.S. Dist. LEXIS 98231, at *20.

### 3. Warner UK

Similar to Defendant McDaid, this Court's ability to exercise specific personal jurisdiction over Warner UK is two-fold. First, Warner UK has purposefully directed harm to the forum by orchestrating and funding the production, recording, and exploitation of the Infringing Works in California, and entering into contracts with California residents regarding the same—*as Warner UK admits*. (DE 45 at ¶¶ 6, 24). Additionally, Warner UK receives a share of revenues generated from the exploitation of the Infringing Works in California, and the inter-company licenses between Warner UK and its U.S. subsidiaries are thought to provide Warner UK final authorization and/or approval rights for *specific* exploitations of the Infringing Works. Each, independently, is grounds for this Court's exercise of specific personal jurisdiction.

Warner UK is Sheeran's record label and owner of the infringing sound recording

21

of "Photograph." (DE 45 at ¶ 5). Warner UK released the infringing album *Multiply*, containing the infringing sound recording. Sheeran is signed to Warner UK, and was recording "Photograph" in California on Warner UK's behalf and at its instance and expense—*which Warner UK does not deny in its detailed Declaration*. (DE 45). Warner UK also admits that recording artists signed to Warner UK, such as Sheeran, have resided in rented apartments or houses in California, and Warner UK has paid the costs of such housing accommodations.[11] (DE 45 at ¶ 9, n. 4). Additionally, on the copyright registration for the sound recording, Warner UK is listed as being domiciled in the U.S., having a U.S. address, and being a citizen of the U.S.[12] (DE 54-13). Copyright registrations are prima facie evidence of all facts included therein. 17 U.S.C. § 410(c).

Further, Warner UK entered into various contracts with California entities and residents to create the Infringing Works and infringing *Multiply* album. (DE 50-1 at Pages 8-9). Warner UK directed the recording and production work of the Infringing Works in California and contracted with, *at least*, Rick Rubin and Jeff Bhasker regarding the same—each of whom are based in California, have recording studios in California, and performed work on "Photograph" in California. (DE 45 at ¶ 24). Warner UK's agent, Mr. Sheeran, created the Infringing Works in California at Warner UK's instance and expense. These facts alone make Warner UK subject to the jurisdiction of this Court. *Herring Networks, Inc.*, 2016 U.S. Dist. LEXIS 98231, at *20.

Further, similar to McDaid, despite being on notice of Plaintiffs' claims of

---

[11] Plaintiffs have no actual knowledge as to whether Warner UK paid for Sheeran's housing accommodations while he and McDaid were working on the Infringing Works and infringing *Multiply* album in California; however, it is telling that Warner UK did not deny doing so. This is yet another topic ripe for jurisdictional discovery, should this Court find Plaintiffs have yet to set forth sufficient grounds for personal jurisdiction.

[12] Moving Defendants have noted that this address was included by an unidentified employee who "simply made a mistake in this regard." (DE 46 at ¶ 7). Further, Defendants claim that Warner UK being listed as a United States citizen, and as being domiciled in the United States is "inaccurate." (*Id.*). Plaintiffs have already requested this Court to permit discovery on this issue. (DE 50-1 at Page 8 n.10).

infringement, Warner UK has continued to exploit, and benefit from the exploitation of, the Infringing Works in California. Much of this harm has been directed to Plaintiffs. Warner UK had at least constructive knowledge that Plaintiffs are California residents. Because Plaintiffs are the copyright holders, located in California, and allege willful copyright infringement, Warner UK's intentional acts were expressly aimed at California. *Cirana Corp.*, 2016 U.S. Dist. LEXIS 140096, at *15, *17.

Alternatively, similar to many of the Moving Defendants, Plaintiffs have shown that Warner UK likely retains authorization and/or approval rights over its US affiliates, and thus has purposefully directed suit-related conduct to California by authorizing and/or approving *specific* exploitations in the forum. Warner UK's inter-company license agreements with the U.S. Warner entities will likely reveal the same.

Warner UK is the ringleader of infringing activity centered in, and directing harm to residents of, California. Warner UK is not only the owner of the infringing sound recording but also the financier of the Infringing Works, and contracted with California residents to record, produce, and finalize the infringing sound recording in Los Angeles. Warner UK's conduct "facilitates the activities that occurred in the U.S. If plaintiff's claims are true, then the foreign defendants' activities participated actively in the scheme that brought the [infringing] song to the United States." *Mattel, Inc.*, 28 F. Supp. 2d at 1128. Similar to the foreign defendants in *Mattel*, this Court may exercise specific personal jurisdiction over Warner UK.

### 4. *Sony/ATV UK*

Defendant Sony/ATV UK is a party to the music publishing agreement along with fellow Moving Defendant Ed Sheeran Limited for the services of Ed Sheeran, pursuant to which, Sony/ATV UK owns Sheeran's share of the copyright in the infringing composition. (DE 42 at ¶ 7). Plaintiffs have shown colorable grounds that Sony/ATV UK retains similar approval and/or authorization rights over Sony/ATV US in regards to specific exploitations of the Infringing Works, and Sony/ATV's inter-company licensing agreements will likely reveal the same.

### 5. *Ed Sheeran Limited*

Ed Sheeran Limited collects "worldwide" recording and publishing income payable to Mr. Sheeran from various sources. (DE 40 at ¶ 7). Plaintiffs have also set forth colorable grounds that Ed Sheeran Limited is potentially the alter ego of Ed Sheeran, himself, and potentially two Delaware entities: Ed Sheeran, LLC, and Ed Sheeran LP.[13] Mr. Sheeran is the sole owner of Ed Sheeran Limited, (DE 54-7), and does not dispute this Court's ability to exercise personal jurisdiction over him in this matter. (DE 38 at Page 3, n. 3).

Defendants admit that income generated from exploitations of "Photograph" in California is collected "by other third party entities" but does not name these entities. (DE 40 at ¶ 7). Despite repeated requests, and an offer to voluntarily dismiss Ed Sheeran Limited if Defendants would identify the appropriate U.S. entities collecting Sheeran's revenues from U.S. exploitations of the Infringing Works, Defendants have refused to provide any information on Ed Sheeran, LLC, and Ed Sheeran LP. (DE 50-7 at ¶ 5; DE 53 at ¶ 5; DE 54 at ¶ 6). Regardless, Plaintiffs have still provided colorable grounds to show that Ed Sheeran Limited has likely retained similar approval and/or authorization rights regarding the exploitation of "Photograph," or through these Delaware entities has purposefully directed its actions to California.

### 6. *Nathan Cable Touring LLP*

Defendants claim that Nathan Cable Touring LLP collects touring income on behalf of Sheeran for Sheeran's personal concert performances conducted *outside* the U.S. (DE 40 at ¶ 8). Sheeran is an officer and member of Nathan Cable Touring LLP (DE 54-15), and again, Mr. Sheeran is not challenging personal jurisdiction over himself. (DE 38 at Page 3, n. 3). Just as with the "Ed Sheeran entities" in the paragraph

---

[13] *See Mossimo Holdings LLC v. Haralambus*, No. CV 14-05912, 2015 U.S. Dist. LEXIS 14133, at *6-7 (C.D. Cal. Feb. 3, 2015) ("The 'single-business-enterprise' theory is . . . applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose . . . [T]his means that they are jointly and severally liable.").

above, there is a Delaware entity called Nathan Cable, LLC, which Plaintiffs have shown is likely responsible for organizing Mr. Sheeran's U.S. tours and for collecting Mr. Sheeran's tour revenue from exploitations within the U.S. Again, Plaintiffs requested information regarding the appropriate U.S. entity and offered to voluntarily dismiss Nathan Cable Touring LLP if Defendants would provide said information. (DE 50-7 at ¶ 5; DE 53 at ¶ 5; DE 54 at ¶ 6). However, Defendants denied to voluntarily provide such information. However, Plaintiffs have still set forth a colorable basis that Nathan Cable, LLC is Defendant Nathan Cable Touring LLP's agent or alter ego in regard to Mr. Sheeran's U.S. tours. At the very least, Plaintiffs have demonstrated the need for discovery on all of these entities. Accordingly Plaintiffs have set forth colorable grounds that all of the Moving Defendants have purposefully directed their suit-related conduct to California, because, at the very least, they "commit[ed], approv[ed], and/or authoriz[ed]," infringing conduct in California, and/or played some role in "creating, controlling, or employing the distribution system" that led to the exploitation of the Infringing Works in the forum, and thus have expressly aimed their conduct to California. *See Unicolors*, 2016 U.S. Dist. LEXIS 21968, at *14-15.

## III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendants' motion in its entirety.

Dated: November 21, 2016

By: /s/Richard S. Busch
Richard S. Busch (TN BPR 014594)
(admitted *pro hac vice*)
Paul H. Duvall (SBN 73699)
E-Mail: pduvall@kingballow.com
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
Telephone: (424) 253-1255
Facsimile: (888) 688-0482

Mark L. Block (SBN 115457)
E-Mail: mblock@wargofrench.com
WARGO & FRENCH LLP
1888 Century Park East, Suite 1520
Los Angeles, CA 90067
(310) 853-6355 Facsimile: (310) 853-6333

*Attorneys for Plaintiffs*
HALOSONGS, INC.,
MARTIN HARRINGTON, AND
THOMAS LEONARD

1

## **PROOF OF SERVICE**

The undersigned certifies that a copy of the forgoing instrument was served upon Donald S. Zakarin and Ilene S. Farkas by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list, on November 21, 2016. I declare under the penalty of perjury that the statement above is true to the best of my information, knowledge and belief.

By: /s/ Richard S. Busch
Richard S. Busch (TN BPR 014594)
(admitted *pro hac vice*)
KING & BALLOW
315 Union Street, Suite 1100
Nashville, Tennessee 37201
(615) 259-3456
*Attorney for Plaintiffs*